**UNITED STATES, Appellee,**

v.

**Patrick J. ARONDEL DE HAYES, Private First Class U.S. Army, Appellant.**

No. 50690.

SPCM 19643.

U.S. Court of Military Appeals.

April 28, 1986.

For Appellant: *Colonel Brooks B. La Grua, Major Eric T. Franzen, Captain Bernard P. Ingold, Captain David W. Sorensen* (on brief); *Colonel William G. Eckhardt, Lieutenant Colonel William P.*

*Heaston, Captain Harry L. Williams, Jr., Captain Michael D. Graham.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson, Captain Erik M. Stumpfel* (on brief); *Lieutenant Colonel Thomas M. Curtis.*

*Opinion of the Court*

EVERETT, Chief Judge:

At his special court-martial the accused pleaded not guilty but nonetheless was convicted of false swearing, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] Thereafter, he was sentenced to a bad-conduct discharge, confinement and forfeiture of $250 pay per month for 2 months, and reduction to the lowest enlisted grade. The convening authority approved these results. After modifying the language of the findings somewhat,[2] the Court of Military Review affirmed in an unpublished memorandum opinion.

In this Court, the accused questions the legal sufficiency of the evidence to convict him of making a false sworn statement. 19 M.J. 242 (1984). His challenge is without merit.

## I

Sometime in January 1983, the accused realized that he was unable to make the monthly installment payments on a stereo set that he recently had purchased from a local merchant. To avoid its being repossessed, he asked Private First Class Brian Lindsay to take the stereo from his (the accused's) barracks room so that he could report it stolen. Lindsay agreed; and on

---

1. Additionally, the accused was charged with conspiracy to commit false swearing and larceny of his roommate's stereo equipment, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921, respectively. *See* text, *infra*. Upon defense motion, the military judge dismissed the former, and after presentation of the evidence, he acquitted the accused of the latter.

2. The Court of Military Review excepted from the specification that part of the false sworn statement that only the accused and his roommate had keys to their room. Unpublished opinion at 3.

January 27, 1983, the accused loaned his room key to Lindsay.

The next day while the accused and his roommate were in the field, Lindsay entered the room and, pursuant to plan, removed the accused's stereo equipment. On his own initiative, Lindsay also removed a stereo belonging to the accused's roommate, and he took both stereos to a friend's apartment for storage.

Later that day, Special Agent Richard Kisling of the Criminal Investigation Division (CID) was notified of a possible housebreaking and larceny,[3] and he went to the accused's barracks to investigate. Meanwhile, the accused also had been notified of the housebreaking; and the two met in his orderly room and proceeded to his room. After the accused had inventoried his property, Kisling asked him to make a written statement at the CID office. In the statement, the accused indicated that his roommate had left the room a few minutes before him that day; he detailed how he had secured the room before departing and that his stereo equipment was in the room when he left; and he explained that only he and his roommate had keys to the room, though the accused had lost a key in the parking lot about two months earlier which had never been returned.

Also, the accused recited in his statement that around 1600 hours on the day he gave the statement he "was notified while I was in the field that my room had been broken into and I was brought back to the unit to conduct an inventory." Thereupon, "I conducted an inventory and found the following items missing: ... [stereo equipment]." Moreover, when the accused was asked whether he "suspect[ed] anyone in the theft of ... [his] property," he answered, "No."

On February 1, Special Agent John Swaby received information that the stereo equipment had, in fact, not been stolen at all. The accused was questioned again on February 2, and after he was advised of his rights under Article 31, UCMJ, 10 U.S.C.

§ 831, he made a second statement which acknowledged his complicity in the plan. Furthermore, he conceded that he had made "a sworn statement reporting the theft" and that he knew that "the statement was not true and [that] it was wrong to report the property as stolen."

II

As modified by the Court of Military Review, the findings were that the accused had made a false sworn statement "that his stereo equipment had been stolen." The issue before us is the sufficiency of the evidence to prove that his first statement, quoted earlier in pertinent part, was in fact false. More specifically, the question is whether appellant's first statement did in fact affirmatively aver that his property had been "stolen."

The parties agree that the primary requirement for a prosecution of this nature is that the statement actually be false. Further, they agree that a statement which is technically, literally, or legally true cannot form the basis for such a conviction, even if the statement succeeds in misleading or confusing the questioner. *See Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973); *United States v. Purgess*, 13 U.S.C.M.A. 565, 33 C.M.R. 97 (1963). They disagree, of course, on whether the accused's averments in his statement were technically or literally true.

The accused submits—correctly, we think—that it was literally true that he had been "notified ... that ... [his] room had been broken into." Significantly, he himself never stated that it *had* been broken into. Moreover, he urges—again, probably correctly—that he did not "suspect anyone in the theft of ... [his] property" because he, in fact, knew there had been no "theft." These answers may have misled the questioner but arguably they were literally true. As the Government itself recognizes, "[L]iterally true but unresponsive answers

3. While it is not clear who was the "third party" who initially reported the incident, the record at one point implies that it may have been the accused's roommate.

are to be remedied through more precise questioning. *See Smith v. United States,* 169 F.2d 118 (6th Cir.1948); *United States v. Abrams,* 568 F.2d 411 (5th Cir.1978), *cert. denied,* 437 U.S. 903 [98 S.Ct. 3089, 57 L.Ed.2d 1133] ... (1978); *United States v. Haimowitz,* 725 F.2d 1561 (8th Cir.1984); *United States v. Purgess,"* supra.

The accused also represented that the listed items in his statement were "missing." The accused relies on this definition of "missing" found in *The American College Dictionary* 778 (1970): "lacking; absent; not found." The Government, as might be expected, responds with definitions from other dictionaries which are not as acquitting.

We believe the Government has the better of this argument. *Webster's Third New International Dictionary of the English Language, Unabridged* 1445 (1981), contains this definition of "missing": "1: not able to be found: not present: ABSENT ... 2: absent without explanation from one's home or usual or expected place of resort ..." The key distinction between this definition and the one upon which the accused relies, obviously, is that the absence is *without explanation.* Even the accused recognizes that words, clear on their face, are to be understood in their common sense and usage. *Government of the Canal Zone v. Thrush,* 616 F.2d 188 (5th Cir.1980). We are comfortable in the notion that, in common sense and usage, when someone states that an item is "missing," he means not just that it is absent but also that he has no conclusive explanation for its absence.

In this context, the accused lied when he said that the listed items were "missing." Having said that, he said more than simply that they were absent: He said that he had no explanation for their absence. Of course, this was not literally true.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.