*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and McCOY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Brian E. WENZEL**
Master Chief Hospital Corpsman (E-9), U.S. Navy
*Appellant*

**No. 202400282**

_____

Decided: 11 May 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Rachel E. Trest

Sentence adjudged 25 April 2024 by a special court-martial tried at Naval Air Station Jacksonville, Florida, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Lieutenant Commander Marc D. Hendel, JAGC, USN*

For Appellee:
*Commander John T. Cole, JAGC, USN*
*Lieutenant Stephanie N. Fisher, JAGC, USN*

Senior Judge HARRELL delivered the opinion of the Court, in which Chief Judge DALY joined. Judge McCOY filed a dissenting opinion.

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

HARRELL, Senior Judge:

After being excused from his command's two previous urinalyses, Appellant's name appeared for a third time in 12 days on the urinalysis testing register. Appellant's command master chief texted him after the testing window closed, asking, "Did you provide a sample this morning?" Appellant did not provide a urine sample that morning, but he replied, "Squared away." In the Government's view, that was an affirmative response to the question, and thus, a lie. Appellant claims, as he did at trial for making a false official statement and other offenses, that his statement was true—he was in fact squared away since he was excused from providing a sample that day—and the finding of guilty is thus legally and factually insufficient.[1] We disagree and affirm the findings and sentence.

## I. BACKGROUND

Urinalyses for Navy Medical Readiness and Training Command (NMRTC) Jacksonville personnel are conducted at Naval Hospital Jacksonville within a strict time window of 0700–1100.[2] This applies equally to those personnel working at Branch Health Clinic Jacksonville, "maybe a couple miles away

_____

[1] Appellant raises the following assignments of error:

    I. Is the evidence factually sufficient to sustain Appellant's conviction for false official statement where Appellant texted "squared away" regarding a urinalysis from which he had been excused?

    II. Is the evidence legally sufficient to sustain Appellant's conviction for false official statement in light of *Thompson v. United States*, 145 S. Ct. 821 (2025), which held that even statements that are misleading are not necessarily false?

[2] R. at 453–54.

from the hospital."[3] Random lists are generated the day before a urinalysis, and the Assistant Urinalysis Program Coordinator (UPC) emails notifications with the lists "to all the directorates and the Chiefs Mess and all the [Leading Petty Officers] of the command" between 0500–0515 on testing days.[4] The UPC also sends the list via text message to the NMRTC chief petty officers on the morning of testing days.[5]

The command conducted a random urinalysis on 7 July 2023, and Appellant's name appeared on the list. Commander (CDR) Mike,[6] the Associate Director of the Branch Health Clinics, texted Appellant, the Senior Enlisted Leader of the same, at 0619 that day, "Morning! You are in the urinalysis list this AM, enjoy!"[7] Appellant responded at 0911, "Crap! I just saw this! I'm at a conference. CAPT knew about but I totally forgot to put it on your calendar. 🙄 My apologies."[8] CDR Mike responded with a thumbs up on Appellant's text message. CDR Mike testified that he was unaware of Appellant's attendance of a conference that day, but Master Chief Hospital Corpsman (HMCM) Delta, the Command Master Chief, testified that Appellant had told him about it. Appellant was excused from that day's urinalysis with a notation of temporary additional duty on the urinalysis testing register.[9]

As a matter of policy, since Appellant missed the urinalysis, he was automatically rolled to the next random urinalysis, which occurred on 13 July 2023. He texted HMCM Delta at 0528 that morning, "Having a massive flare up. Been in the bathroom since 3. 🤢 I know I'm on the list. I'll be there as soon as I can. It's been like all week. . . . Not going to lie. I feel like absolute 💩 today."[10] HMCM Delta responded, "Take your time and be safe. Let me know if you need anything."[11]

Appellant texted CDR Mike at 0926:

---

[3] R. at 466, 572–73.

[4] R. 454, 464.

[5] R. at 400.

[6] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[7] Pros. Ex. 9.

[8] Pros. Ex. 9.

[9] Precisely how this and the other excusals were formally effected is unclear from the record.

[10] Def. Ex. A at 1.

[11] Def. Ex. A at 1.

> This is bad sir. Like pissing water out of my ass every 20 minutes bad. Can't be something I ate because I didn't eat yesterday. 🫨 😡 I don't know if I've ever asked you but would you mind writing me [a sick in quarters (SIQ)] chit? Just to put it on record to cover [the UPC] for urinalysis. (Trust me, I'm not trying to dodge it!) I haven't felt this crappy (pun intended) in some time. This has been going on since Saturday. Just annoying and tiring up til now. I'm pushing electrolytes and resting. I'm glad Master Chief is there. Thanks boss. I'll be in Mayport tomorrow . . . . Sorry for the long text. I'll give you a guess where I'm sitting? 😵‍💫 🤢 🫨 😇 Thanks again sir.
>
>     . . . .
>
> I told [the UPC] to get me on the next pee list so his records are gtg. Think I'm going to close my eyes for awhile. Everything good on your end? . . .[12]

CDR Mike responded, "All good here, feel better."[13] CDR Mike testified that he knew Appellant suffered from irritable bowel syndrome (IBS). Appellant was excused from that day's urinalysis with a notation of SIQ on the urinalysis testing register.

HMCM Delta texted Appellant later at 1157, asking, "Did you pee for your country?"[14] Appellant responded:

> CDR [Mike] placed me SIQ brother. I had him do the paperwork this time (usually it's just "stay home and rest. That's really the only treatment according to GI, so that's what we do) I wanted to make sure [the UPC] accounted for all personnel. I think today is the worst of it. I'm still having episodes after 3 doses of immodium. . . .[15]

Appellant was again rolled to the next urinalysis, which occurred on 19 July 2023. The UPC texted the chief petty officers at 0512 that morning with the urinalysis list.[16] Appellant's name was on it. Appellant chaired the Junior Sailor of the Quarter (JSOQ) Board at Branch Health Clinic Jacksonville that

---

[12] Pros. Ex. 10.

[13] Pros. Ex. 10 at 3.

[14] Pros Ex. 13; Def. Ex. A at 2.

[15] Pros. Ex. 13; Def. Ex. A at 2.

[16] Pros. Ex. 14 at 1.

morning, which began at approximately 0830.[17] Appellant texted HMCM Delta at 0849:

> Going on day 8 of this IBS attack. 😡 🤢 😔 Let's just say wearing whites today is risky. I will be at SOQ boards this morning if you need anything. We'll see how I'm feeling after the board is over. I'm spent. Brother, as embarrassing as this is, I didn't make it to the head in time this morning. That's the battle. Just wanted to keep you in the loop. I haven't eaten since dinner Monday night. 🙄 [18]

Appellant did not provide a urine sample on 19 July 2023. He was excused with a notation of alternate worksite on the urinalysis testing register.

Appellant texted HMCM Delta again at 1200, "Ran way late over here at Branch waiting on a Sailor. We're scoring and deliberating the JSOQ board. 11 candidates! Should be done in about 15. . . ."[19] HMCM Delta texted back, "Did you provide a sample this morning?"[20] Appellant responded, "Squared away."[21] HMCM Delta understood that response to mean that Appellant had provided a urine sample.[22] He later discovered, however, that Appellant did not provide a urine sample that morning when he saw the alternate worksite notation by Appellant's name on the urinalysis testing register. He then spoke to Appellant, and Appellant explained that he was excused from the urinalysis. Having received that clarification, HMCM Delta did not believe the "Squared away" response was a lie.[23]

Appellant was again rolled to the next urinalysis, which occurred on 24 July 2023. This time, he was considered a "must provide," which, according to the Assistant UPC, means that "[n]o matter what, they . . . need to come in. . . . No matter what, they . . . have to give [a urine sample] unless circumstances prevent them from it that were out of the control--acts of God I guess."[24] Appellant did provide a urine sample that day.

---

[17] R. at 573–74.

[18] Pros. Ex. 15 at 1.

[19] Pros. Ex. 15 at 2.

[20] Pros. Ex. 15 at 2.

[21] Pros. Ex. 15 at 2.

[22] R. at 418.

[23] R. at 440, 442–43.

[24] R. at 517, 519.

The Government charged Appellant with several offenses: making a false official statement to HMCM Delta on 19 July 2023; violating a general order by wrongfully avoiding providing a urine sample on 19 July 2023; violating a general order by wrongfully using Delta-8-Tetrahydrocannabinol (THC), a product derived from hemp, on 24 July 2023 and 13 September 2023; and wrongfully using Delta-9-THC, a Schedule I controlled substance, on 24 July 2023.

The military judge dismissed the Delta-8-THC specifications before trial for failing to state an offense. After the Government presented its case, the military judge granted a motion for a finding of not guilty for violating a general order by wrongfully avoiding providing a urine sample on 19 July 2023. At the conclusion of the merits phase of trial, the military judge acquitted Appellant of wrongful use of Delta-9-THC and convicted him of making a false official statement.

## II. DISCUSSION

### A. Appellant's conviction for making a false official statement is legally sufficient.

We first consider the legal sufficiency of Appellant's conviction according to the following framework:

> We review questions of legal sufficiency de novo. The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This legal sufficiency assessment draws every reasonable inference from the evidence of record in favor of the prosecution. As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction.[25]

Additionally,

> [i]n performing our legal review we are not limited to appellant's narrow view of the record. Further, the appellate question is not whether the evidence is better read one way or the other, but whether . . . a reasonable factfinder reading the evidence one

---

[25] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation modified).

way could have found all the elements of the offense beyond a reasonable doubt.[26]

Article 107 provides in relevant part that "[a]ny person subject to [the UCMJ] who, with intent to deceive . . . makes any . . . false official statement knowing it to be false[,] shall be punished as a court-martial may direct."[27] The Government charged Appellant with violating this statute in the following manner:

> In that HMCM Brian E. Wenzel . . . did, at or near Jacksonville, Florida, on or about 19 July 2023, with intent to deceive, make to HMCM [Delta], an official statement, to wit: "squared away," which statement was false in that the statement conveyed that HMCM Wenzel had provided a urine sample when HMCM Wenzel had not provided a urine sample, and was then known by the said HMCM Wenzel, to be so false.[28]

As charged, the elements of this offense are:

> (1) That Appellant made to HMCM Delta a certain official statement, that is: "Squared away";
>
> (2) That such statement was false in that it conveyed that Appellant had provided a urine sample when Appellant had not provided a urine sample;
>
> (3) That Appellant knew it to be false at the time he made it; and
>
> (4) That the false statement was made with the intent to deceive.[29]

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found these elements beyond a reasonable doubt.

The thrust of Appellant's argument is that his "Squared away" response was a true statement since "he had taken care of his urinalysis obligation by obtaining a valid excusal due to his official duties at an alternate worksite."[30]

---

[26] *United States v. Gutierrez,* 73 M.J. 172, 175 (C.A.A.F. 2014) (citation modified).

[27] 10 U.S.C. § 907.

[28] Charge Sheet.

[29] *Manual for Courts-Martial, United States* (2023 ed.), pt. IV, para. 41.b.(1) at IV-54.

[30] Appellant's Brief at 11.

As a result, Appellant argues, his "statement was neither false, nor known to be false, nor made with an intent to deceive."[31] We primarily focus, then, on the falsity of Appellant's statement, a determination of which "must be made with reference to the specific language alleged to be false and the context in which it was made."[32]

Considering the legal sufficiency of convictions for false official statements by falsely claiming to be married on official government documents, the U.S. Court of Military Appeals explained in *United States v. Allen*:

> [Article 107] does not expressly delineate the standard under which an official statement might properly be found false or untrue. Conceivably, a statement concerning one's marital status could be evaluated for falsity in light of one's personal opinion, religious precepts, state law, or even federal law. However, the appropriate standard to determine this factual question at a court-martial is that expressly pleaded by the Government as the basis for its allegation that appellant made a false official statement. In other words, the truth or falsity of an accused's official statement depends upon the matter asserted in that statement and the governmental context in which the statement was made. If this were not the law, an accused could be found guilty of making a false official statement for providing a truthful answer as requested by the government form but which was nonetheless false for some other purpose not covered by the form.[33]

The inverse of that last point is also true. Appellant cannot escape culpability for making a false official statement by conjuring a different context in which it was truthful. HMCM Delta didn't ask if Appellant had informed the UPC of his whereabouts. He didn't ask if Appellant obtained another excusal from the urinalysis. He didn't ask if Appellant was generally in compliance with the command's urinalysis program. He asked if Appellant provided a sample that morning. Appellant could have been squared away in any other context, but he was not squared away in the only context that mattered: he did not provide a urine sample that morning. Had Appellant later explained that he was referring to his immaculate uniform or tidy workspace as "Squared

---

[31] Appellant's Brief at 23. Appellant does not challenge the legal or factual sufficiency of the first element, that of making the statement and its officiality.

[32] *United States v. Evans*, 37 M.J. 468, 471 (C.A.A.F. 1993) (citation omitted).

[33] 27 M.J. 234, 237 (C.M.A. 1988) (citations omitted).

away," would there be a serious claim that his statement was *technically* true? Of course not.

If a superior asks a subordinate if he submitted a delinquent report to headquarters, a "Squared away," response would most reasonably convey that he did. It would not convey that the subordinate merely received yet another extension, leaving the task still incomplete. Context is critical.

Appellant is, of course, correct that false and misleading are different adjectives,[34] and Article 107 criminalizes only official statements that are false. Relatedly, we have held that "unresponsive answers to unambiguous questions that are 'technically, literally, or legally true cannot form the basis for such a conviction, even if the statement succeeds in misleading or confusing the questioner.' Rather, 'literally true, but unresponsive answers are to be remedied through more precise questioning.'"[35] None of this helps Appellant, though, unless we were to conclude that a rational trier of fact could have found the "Squared away" statement to be misleading and nothing more.

Whatever specific definition we were to assign the term "squared away,"[36] we conclude that a rational trier of fact could have found it to be an affirmative, and thus false, response to the question of whether Appellant provided a urine sample. Appellant essentially contends that there is a better way to read the evidence, but that is not the standard.

Appellant treats the third element, that of Appellant's knowledge of the statement's falsity, as a domino that necessarily falls in succession to the second. We disagree and conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant knew his statement to be false at the time he made it.

Appellant's argument regarding the last element, that of intent to deceive, is more nuanced. He highlights evidence of his character for truthfulness and insists upon an absence of motive and any potential material gain. However, in our de novo review, we agree with the military judge in her special findings:

---

[34] *See Thompson v. United States*, 604 U.S. 408, 413 (2025) ("[F]alse and misleading are two different things. A misleading statement can be true. And a true statement is obviously not false. So basic logic dictates that at least some misleading statements are not false." (citations omitted)).

[35] *United States v. Jacquez*, No. NMCCA 201200201, 2012 CCA LEXIS 382, at *4 (N-M. Ct. Crim. App. Oct. 10, 2012) (unpublished) (footnote omitted) (quoting *United States v. Arondel De Hayes*, 22 M.J. 54, 55–56 (C.M.A. 1986)).

[36] In her special findings, the military judge defined the term according to its common usage in the Navy as "good to go" and "no problem." App. Ex. LXII at 3.

[T]he brevity and misleading nature of, "Squared away." put into context with how the Accused normally interacts with [HMCM Delta], to include letting him know when he has previously been excused from urinalysis on 13 July 2023 . . . in contrast with his answer, "Squared away." . . . demonstrates beyond a reasonable doubt that the Accused intended to purposely mislead, or cause [HMCM Delta] to believe as true that which is false, that he had provided a urinalysis sample when he knew he did not.[37]

Why did this verbose, "active communicator"[38] suddenly turn elliptical when directly asked if he provided a urine sample? Because of "time pressure" during the JSOQ Board, insists Appellant.[39] If that was the impetus (despite just sending a much wordier text message), "No," or "Excused," would have been just as succinct as his chosen response, but with the imperative distinction of being true. And if he wanted to dodge the question for the moment, "Explain later," would have at least been a not false response. We conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant answered, "Squared away," with intent to deceive.

**B. Appellant's conviction for making a false official statement is factually sufficient.**

Article 66(d)(1)(B), Factual Sufficiency Review, provides:

(i) In an appeal of a finding of guilty . . . the Court [of Criminal Appeals] may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against

---

[37] App. Ex. LXII at 4.

[38] R. at 395.

[39] Appellant's Brief at 21.

the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.[40]

The U.S. Court of Appeals for the Armed Forces interpreted various portions of this statute as follows:

> If the two express trigger conditions (i.e., an assertion of an error and a showing of a deficiency) are not met, then nothing in amended Article 66, UCMJ, either requires or allows a CCA to review the factual sufficiency of the evidence. . . .
>
> . . . .
>
> . . . [W]e construe the requirement of "appropriate deference" when a CCA "weigh[s] the evidence and determine[s] controverted questions of fact" to imply that the degree of deference will depend on the nature of the evidence at issue. We reach this conclusion because Article 66(d)(1)(B)(ii)(I), UCMJ, now addresses not just the testimony of witnesses but also all other evidence. For example, a CCA might determine that the appropriate deference required for a court-martial's assessment of the testimony of a fact witness, whose credibility was at issue, is high because the CCA judges could not see the witness testify. In contrast, when the CCA can assess documents, videos, and other objective evidence just as well as the court-martial, the CCA might determine that the appropriate deference required is low. The statute affords the CCA discretion to determine what level of deference is appropriate . . . .
>
> . . . .
>
> . . . [F]or a CCA to be "clearly convinced that the finding of guilty was against the weight of the evidence," two requirements must be met. First, the CCA must decide that the evidence, *as the CCA has weighed it*, does not prove that the appellant is guilty beyond a reasonable doubt. Second, the CCA must be clearly convinced of the correctness of this decision.[41]

Appellant has made a specific showing of a deficiency in proof regarding the falsity of the statement and the intent to deceive. We have in turn weighed the evidence subject to appropriate deference to the fact that the trial court

---

[40] 10 U.S.C. § 866(d)(1)(B).

[41] *United States v. Harvey*, 85 M.J. 127, 130–32 (C.A.A.F. 2024) (emphasis in original).

saw and heard the witnesses and other evidence, and appropriate deference to findings of fact entered into the record by the military judge,[42] and we are not clearly convinced that the finding of guilty was against the weight of the evidence.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[43]

The findings and sentence are **AFFIRMED**.

---

[42] Appellant disputes that special findings made pursuant to Rule for Courts-Martial 918(b) are "findings of fact entered into the record by the military judge" as used in Article 66(d)(1)(B)(ii)(II). We conclude that special findings are exactly that, as this Court implicitly did in the published opinion in *United States v. Dillenburger*, 85 M.J. 599, 606 (N-M. Ct. Crim. App. 2025), *review denied*, 86 M.J. 250 (C.A.A.F. 2025).

[43] Articles 59 & 66, UCMJ.

_____

McCOY, J. (dissenting):

I respectfully dissent. For the reasons discussed below, I would find that a reasonable factfinder could not have found that "squared away" was false with the evidence presented at trial in the light most favorable to the prosecution. I would find the evidence is therefore legally insufficient to support a conviction for making a false official statement. For the reasons discussed below, I would also find Appellant's conviction is factually insufficient as I am clearly convinced that the finding of guilty is against the weight of the evidence.

## I. BACKGROUND

On 19 July 2023, Appellant was assigned as the Senior Enlisted Leader for the Directorate for Branch Health Clinics at the Naval Medical Readiness and Training Center (NMRTC) Jacksonville, Florida.[1] That morning at 0512, Chief Hospital Corpsman (HMC) Alpha, the UPC, sent a message to a senior enlisted personnel group chat that included the urinalysis personnel list for 19 July 2023. Appellant was on the urinalysis list.[2]

OPNAV Instruction 5350.4E is the Navy instruction governing drug prevention and serves as the governing instruction for NMRTC's drug prevention instruction.[3] The Internet Forensic Toxicology Drug Testing Laboratory Portal (iFTDTL) is the system NMRTC uses for its drug testing and results. On urinalysis testing days, Directorate Leading Petty Officers or above would send a list of individuals on the urinalysis list that were on leave, temporary duty, etc., at 1000 to the Assistant UPC, Hospital Corpsman First Class (HM1) Bravo. Corpsman First Class Bravo would compile the list during the last hour of testing and mark the reason for the absence on the testing roster.[4] NMRTC conducts urinalyses at the main hospital in a strict four-hour window from 0700–1100.[5] If members selected for a urinalysis are not present during the testing window, without excuse, it is marked as an unauthorized absence (UA).

_____

[1] R. at 653; Def. Ex. C at 7.

[2] Pros. Ex. 14; R. at 413.

[3] R. at 455; Pros. Ex. 21.

[4] R. at 465–66.

[5] R. at 453–54.

In addition to the chat messages, the Directorates, Chiefs Mess, and the Leading Petty Officers of NMRTC receive notification of personnel required to participate in the urinalysis by email.[6]

HM1 Bravo testified that OPNAV Instruction 5350.4E gives options for excused absences, " . . . but not all of them."[7] HM1 Bravo testified that all of the other excuses are " . . . in the IPO system as a – it's a dropdown menu when I'm closing out."[8] One of the options for being absent from urinalysis in the iFTDTL is alt (alternate) worksite.[9] The reason that a member on the urinalysis list does not provide a sample must be provided to the Assistant UPC by an E-7 or above prior to anything being recorded in the excused section.[10]

Historically, there were multiple senior enlisted group chats to include one for all senior enlisted E-7 and above assigned to NMRTC, a group chat for all Command Master Chiefs assigned to Naval Air Station Jacksonville, and a group chat for NMRTC Senior Enlisted Leaders (SEL), all of the Directorates and the Command Master Chief.[11] On the mornings of required urinalysis collection, the UPC would send a generated email to NMRTC leadership. HMC Alpha would also send urinalysis notifications to the group chats. At some point, the Chiefs Mess at NMRTC voted that there would be one inclusive group chat.[12]

The record is almost devoid of evidence that Appellant received actual notice of the 19 July 2023 urinalysis, with the scant exception that Appellant had been excused from the urinalysis under the iFTDTL category of "alt worksite."[13] However, HMCM Delta trusted that Appellant was on notice that he needed to provide a urinalysis sample on 19 July 2023.[14] HMCM Delta also advised that if a Sailor were to show up at 1101 for the urinalysis, they would be marked UA.[15]

---

[6] R. at 422, 454.

[7] R. at 522.

[8] R. at 522.

[9] R. at 521–23.

[10] R. at 505.

[11] R. at 398.

[12] R. at 403.

[13] Pros. Ex. 4

[14] R. at 421–22.

[15] R. at 429.

On the morning of 19 July 2023, Appellant was located at the Jacksonville Branch Health Clinic, serving as the Chair of a Junior Sailor of the Quarter Board. The Branch Health Clinic was located approximately two miles from the hospital.[16] HMC Sierra, HMC Water, and HMC Alpha (UPC) were also members of the board. The board was set to start at 0800 but was delayed approximately 30 minutes due to air conditioning issues. The board lasted between four and four and a half hours.[17]

At 0849, Appellant sent two text messages to HMCM Delta, and advised, in part, "I will be at SOQ boards this morning if you need anything."[18] As Appellant had been excused from urinalysis, the 19 July 2023 testing register listed Appellant as "alt worksite."[19] Subsequently, at 1200, after the urinalysis testing period closed, Appellant sent the following text message to HMCM Delta and HMCM Charlie, "Ran way late over here at Branch waiting on a Sailor. We're scoring and deliberating the JSOQ board. 11 candidates! Should be done in about 15. It's me, [Tango, November, Water and Echo]."[20] In response to Appellant's text message, HMCM Delta texted, "Did you provide a sample this morning?"[21] HMCM Delta was aware that Appellant had previously been on the urinalysis list and excused from providing urine samples on 7 July 2023 and 13 July 2023.[22] Appellant responded, "Squared away."[23] Appellant was never marked UA for failing to provide a urine sample.[24]

HMCM Delta, one of the recipients of Appellant's text message forming the basis for his conviction for false official statement, testified that at the time he received the message, "Squared away," he believed that Appellant had provided a urine sample.[25] HMCM Delta also testified that Appellant advised that he had been excused from the urinalysis, and once HMCM Delta received clarification from Appellant, he understood that "squared away" did not mean he

---

[16] R. at 572; Pros. Ex. 15.

[17] R. at 573–74, 604.

[18] Pros. Ex. 15.

[19] R. at 440; Pros. Ex. 4.

[20] Pros. Ex. 15.

[21] Pros. Ex. 15.

[22] R. at 404, 406, 410–19, 428–30, 433–40, 442; Pros. Ex. 11, 12, 13, 14, and 15.

[23] Pros. Ex. 15

[24] Pros. Ex. 4.

[25] R. at 418.

had provided a urine sample.[26] Significantly, HMCM Delta testified that having received clarification, he did not believe "squared away" was a lie.[27]

Three character witnesses with 71 years of combined service testified to Appellant's good military character and character for truthfulness.[28]

## II. DISCUSSION

### A. Appellant's conviction for false official statement is legally insufficient.

We review questions of legal sufficiency de novo and ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[29] "Beyond a reasonable doubt" does not "mean that the evidence must be free from any conflict or that the trier of fact may not draw reasonable inferences from the evidence presented."[30] The standard for legal sufficiency therefore "involves a very low threshold to sustain a conviction."[31]

The elements of false official statement are: (1) that the accused made a certain official statement; (2) that the statement was false in certain particulars; (3) that the accused knew it to be false at the time; and (4) that the statement was made with the intent to deceive.[32]

In order to prove Appellant guilty of the Specification of Charge I, the Government had to prove beyond a reasonable doubt that on or about 19 July 2023, Appellant made, with intent to deceive, an official statement "squared away;" that the statement was false in that it conveyed to HMCM Delta that Appellant had provided a urine sample, when he had not, and was then known by Appellant to be false.[33]

---

[26] R. at 439.

[27] R. at 440, 442–43.

[28] R. at 649, 653–54, 660.

[29] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014); *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019).

[30] *King*, 78 M.J. at 221.

[31] *Id.*

[32] *Manual for Courts-Martial, United States* (2023 ed.), pt. IV, para. 41.b.(1) at IV-54.

[33] Charge Sheet.

Evidence at trial established beyond a reasonable doubt that HMCM Delta was Appellant's supervisor as the Command Master Chief of NMRTC Jacksonville. When HMCM Delta inquired as to whether Appellant had provided a urine sample, the question was clearly asked in HMCM Delta's official capacity and Appellant's response, "Squared away," was an official statement.[34]

In her special findings, the military judge ruled that "squared away" had a common meaning in the Navy as "good to go," and "no problem."[35] The military judge then determined that having an excuse [for the urinalysis] is not "no problem" or "good to go," thereby making the term "squared away" totally false, because the term conveyed to HMCM Delta that Appellant had provided a urine sample, when Appellant had not provided a sample.[36]

*Webster's Third New International Dictionary* defines the term "square away" as "to put everything in order or readiness."[37] Similarly, *The Blue-Jacket's Manual* defines "square away" as "to put in proper order; to make things shipshape."[38] Finally, *Benedict on Admiralty* defines the term "square away" as "to straighten, make shipshape, or to get settled in a new job or home."[39]

Evidence at trial showed that Appellant had been excused from the urinalysis on 19 July 2023, and the testing register indicated "alt worksite," which was an excuse available under the iFTDTL.[40] In her reasoning granting Appellant's R.C.M. 917 motion to dismiss Specification 1 of Charge II, the military judge reasoned that Appellant had an excusal for missing the urinalysis and was not subsequently marked UA even after HMCM Delta had reviewed the register with the marking of "alt worksite," and as such the military judge would not consider the excusal from urinalysis unlawful.[41]

---

[34] R. at 396, 418, 439–40, 442 ; Pros. Ex. 14.

[35] App. Ex. LXIII at 3.

[36] App. Ex. LXIII at 3.

[37] *Square away*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1991), at 2241.

[38] Thomas J. Cutler, et al., *The Bluejacket's Manual,* Appendix A, at 1482–83 (25th ed. 2017).

[39] 8 RICHARD J. NIKAS, BENEDICT ON ADMIRALTY, Nautical Glossary (Joshua Force ed. 2026) (accessed via: https://plus.lexis.com/api/permalink/20be6f5c-f097-4449-899a-385ec2aaf3b5/?context=1530671).

[40] R. at 439–40, 522; Pros. Ex. 4.

[41] R. at 640–41.

In prosecutions for false official statements, "[t]he prosecution has the burden of negativing any reasonable interpretation that would make [the accused's] statement factually correct."[42] In the instant case, testimony and evidence showed that subsequent to Appellant's 1200 text message, HMCM Delta, one of the two recipients of the text message, sent a text message that stated, "[d]id you provide a sample this morning?"[43] Appellant responded, "Squared away."[44] HMCM Delta, initially interpreted the term "squared away" to mean that Appellant had provided a urine sample. However, once he was able to discuss the matter later that afternoon in person with Appellant, HMCM Delta was able receive clarification on the meaning of "squared away" and did not believe it was a lie.[45]

"Determination of falsity must be made with reference to the specific language alleged to be false and the context in which it was made."[46] Here, once Appellant was excused from participating in the 19 July 2023 urinalysis, he had met his legal obligation regarding providing a urine sample. Put simply, once he was excused from his obligation, Appellant had placed everything into order. As such, when he sent the text message at 1200 to HMCM Delta and HMCM Charlie, one hour after the urinalysis testing closed, he was legally and factually "squared away," and the text message was a true statement. A true statement cannot form the basis for a false official statement. Appellant was responsive to HMCM Delta's inquiry. That the receiver of the message initially misconstrued what was conveyed by Appellant does not convert a true statement into a falsehood. "[F]alse and misleading are two different things. A misleading statement can be true. And a true statement is obviously not false."[47]

"With respect to the second element, unresponsive answers to unambiguous questions that are 'technically, literally, or legally true cannot form the basis for such a conviction, even if the statement succeeds in misleading or

---

[42] *United States v. Evans*, 37 M.J. 468, 471 (C.M.A. 1993) (internal citations and quotations omitted).

[43] R. at 418, 436–38; Pros. Ex. 15.

[44] R. at 418, 439; Pros. Ex. 15.

[45] R. at 418, 440, 442–43

[46] *Evans*, 37 M.J. at 471 (citing *United States v. Allen*, 27 MJ 234, 237 (C.M.A. 1988)).

[47] *United States v. Thompson*, 604 U.S. 408, 413 (2025) (citation omitted).

confusing the questioner.'"[48] Case law is clear that the listener, or in this case the recipient of the text message, must seek clarification to ameliorate any confusion. "Literally true, but unresponsive answers are to be remedied through more precise questioning."[49] Which is exactly what happened in this case and the reason that HMCM Delta, the recipient of the text message, "Squared away," did not believe it was a lie.[50]

Considering the evidence presented at trial in the light most favorable to the prosecution, a reasonable factfinder could not have found that "squared away" was false. As such the second element cannot be found beyond a reasonable doubt. Since the second element of making a false official statement cannot be found beyond a reasonable doubt, the third and fourth elements of making a false official statement also cannot be found beyond a reasonable doubt. The evidence, therefore, is legally insufficient to sustain a conviction for making a false official statement.

**B. The evidence is factually insufficient to sustain Appellant's conviction of false official statement.**

Appellant must first make a request and show a specific deficiency in proof to trigger the Court's review of a specification for factual sufficiency.[51] If these requirements are met, we then weigh the evidence with, "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence" and with "appropriate deference to findings of fact entered into the record by the military judge."[52]

A general disagreement with a verdict falls short of showing a deficiency in proof. To trigger the factual sufficiency analysis, "an appellant must identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[53]

I would find that Appellant has met his burden to trigger a factual sufficiency review of the finding of guilt for the sole specification of conviction. After

---

[48] *United States v. Jacquez*, No. NMCCA 201200201, 2012 CCA LEXIS 382, at *4 (N-M. Ct. Crim. App. Oct. 10, 2012) (unpublished) (quoting *United States v. Arondel De Hayes*, 22 M.J. 54, 55 (C.M.A. 1986)).

[49] *Arondel De Hayes*, 22 M.J. at 55 (citation modified).

[50] R. at 442–43.

[51] 10 U.S.C. § 866(d)(1)(B).

[52] 10 U.S.C. § 866(d)(1)(B).

[53] *United States v. Valencia*, 85 M.J. 529, 535 (N-M. Ct. Crim. App. 2024).

a complete review of the evidence and using the appropriate standard of deference, including as to the special findings of the military judge, as required, I would conclude that the Government did not present sufficient evidence to prove Appellant's guilt beyond a reasonable doubt as it relates to the second element of the offense. Namely, that the statement was false in certain particulars. For the same reasons the conviction is legally insufficient, it is also factually insufficient. Therefore, I am "clearly convinced that the finding of guilty was against the weight of the evidence."[54]

Accordingly, I respectfully dissent.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[54] *United States v. Harvey*, 85 M.J. 127, 131 (C.A.A.F. 2024); 10 U.S.C. § 866(d)(1)(B).